IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TESSERA, INC. § | |
| § | |
| Plaintiff § | |
| § | |
| vs. § | |
| § | CASE NO. 2:05CV94 |
| MICRON TECHNOLOGY, INC., MICRON § | PATENT CASE |
| SEMICONDUCTOR PRODUCTS, INC., INFINEON § | |
| TECHNOLOGIES AG, INFINEON TECHNOLOGIES § | |
| RICHMOND, LP, INFINEON TECHNOLOGIES § | |
| NORTH AMERICAN CORP. § | |
| § | |
| Defendants § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Micron Technology, Inc.'s, Micron Semiconductor Products, Inc.'s, Infineon Technologies Ag's, Infineon Technologies Richmond, LP's, and Infineon Technologies North American Corp.'s (collectively "Defendants") Partial Motion to Dismiss Counts III and IV of Tessera, Inc.'s ("Tessera") Amended Complaint for Lack of Antitrust Standing (Docket No. 27). Having fully considered the parties' written submissions, the Court **GRANTS** in part and **DENIES** in part Defendants' motion without prejudice to refile as a motion for summary judgment.

### BACKGROUND

Tessera is a developer and licensor of packaging technology for computer memory chips, including chips using synchronous RDRAM technology. Defendants manufacture computer chips utilizing synchronous RDRAM technology and similar competing products. In its amended complaint, Tessera alleges violations of both the Sherman Antitrust Act (Count III) and the Texas

Antitrust Act (Count IV).[1] Tessera claims that Defendants conspired to reduce the output of RDRAM chips, raising the price of the chips and consequently lowering demand. As a result of lowered demand for RDRAM chips and therefore its technology, Tessera contends that its royalties were substantially lower than they would have been in an open and fully competitive market. Tessera alleges this conspiracy was a direct attempt to put it out of business and that the injuries it suffered are separate and distinct from any other entity injured by Defendants' conspiracy. Defendants now move for a dismissal on the pleadings, claiming Tessera does not meet standing requirements to bring an antitrust suit.

## STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where a party fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, the court construes the complaint in favor of the plaintiff and all facts pleaded are taken to be true, no matter how improbable those facts. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, "in order to avoid dismissal for failure to state a claim . . . a plaintiff must plead specific facts, not mere conclusory allegations." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). A court "will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Id.*

---

[1] Tessea also alleges that Defendants are infringing five of Tessera's patents.

## ANTITRUST STANDING

The Texas Antitrust Act is to be construed in harmony with the judicial interpretations of the Sherman Act. TEX. BUS. & COMM. CODE § 15.04. Because standing under the Texas Antitrust Act is co-extensive with the judicial interpretations of the Sherman Act, the two inquiries collapse into the question of whether or not Tessera has Sherman Antitrust standing to sue. *See Abbott Labs v. Segura*, 907 S.W.2d 503, 505 (Tex. 1995).

<u>The AGC Factors</u>

In order for a plaintiff to have antitrust standing they must meet the factors laid out by the Supreme Court and applied by the Fifth Circuit. *See Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-544 (1983) ("AGC")*; See also Bell v. Dow Chemical Co.*, 847 F.2d 1179, 1183 (5th Cir. 1988). Those factors are:

1. the casual connection between the alleged antitrust violation and the harm to the plaintiff;

2. the nature of the alleged injury, including whether the plaintiff is a consumer or a competitor in the relevant market;

3. the directness of the alleged injury, and whether the alleged damages are too speculative;

4. the potential for duplicative recovery; and

5. the complexity of apportioning damages.[2]

*See AGC*, 459 U.S. 519, 537-544 (1983); *see also Bell*, 847 F.2d 1179, 1183 (5th Cir. 1988). None

---

[2] The Fifth Circuit has also stated that "whether there were other parties have been more directly harmed" is an *AGC* factor in determining "proper plaintiff" standing. *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988).

of the *AGC* factors are determinative. All must be balanced together to determine standing. *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989). When the Court considers the casual connection and directness of plaintiff's claims, it will not grant standing to plaintiffs with damage theories that are speculative, abstract, or impractical. *See Bell*, 847 F.2d at 1183. In order for the nature of the alleged complaint to confer antitrust standing, the plaintiff must have suffered the type of injury that the antitrust laws were designed to protect against. The Fifth Circuit requires the plaintiff to be a member of the market in which the relevant antitrust activity was taking place. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2002). Antitrust standing will weigh against the plaintiff for duplicative recovery if a resolution in favor of plaintiff will result in defendant possibly paying damages again for the same acts. *Id*. Finally, if apportioning the damages amongst plaintiffs will result in a long and cumbersome process so as to prolong and complicate proceedings antitrust standing will weigh against the plaintiff. *Id*.

<u>Market Construction on a Motion to Dismiss</u>

When the Court considers a plaintiff's participation in a product market on a motion to dismiss, the Court grants wide deference toward plaintiff's allegations. If the plaintiff sufficiently defines the markets and claims to be a member of them, the Court must accept those contentions. *See Electronic Data Systems Corp. v. Computer Assoc. Int'l, Inc.*, 802 F. Supp. 1463, 1467 (N.D. Tex. 1992) (noting EDS's market definition was sufficient to withstand motion to dismiss). If the alleged market is completely implausible, or the products claimed to be within the market are not reasonably interchangeable, the Court cannot accept the plaintiff's allegations of market membership. *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2nd Cir. 2001); *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

## ANALYSIS

Technology Market

Tessera alleges the existence of a market for synchronous RDRAM technology and further alleges to be a participant in that market. As the Court understands it, this "market" consists of every entity developing and licensing technology that goes into the making of synchronous RDRAM chips. The Court finds this "market" to not be completely implausible. *See Todd*, 275 F.3d 191, 200. However, the Court also finds that while Tessera has alleged participation in a "market," the products within that "market" are not reasonably interchangeable. *See Brown*, 370 U.S. at 325. The products are not interchangeable because they are all technology components of a finished product, synchronous RDRAM chips. The component Tessera licenses, semiconductor packages, are not substitutes for the other components required to manufacture a RDRAM chip.

Turning to the *AGC* factors, as a member of the technology market Tessera was only tangentially affected by the alleged anti-competitive behavior in the chip market. Ripples from the anti-competitive behavior would no doubt have been felt both up and down stream from the market epicenter but suffering from market ripples is not enough to grant antitrust standing. *Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465, 477 (1982) ("It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property."). Tessera develops and licenses semiconductor packages, which are only one of any number of technology components that go into a RDRAM chip. Tessera's direct market RDRAM packaging technology is therefore only one of possibly many subsets of the claimed technology market. Being in a subset of a market once removed from alleged anti-competitive behavior will not suffice to meet the high bar for antitrust

standing. *See Bell*, 847 F.2d at 1183.

Furthermore, in such a broad and pervasive market, the Court finds great potential for duplicative damages. *See id.* Were the Court to accept Tessera's position any technology market subset could have standing to sue Defendants, creating a situation where Defendants may be forced to pay numerous times to numerous plaintiffs for the same activity.

The Court also finds that the injuries Tessera alleges would be indirect and speculative. *See id*. The technology market, including Tessera's packaging market subgroup, is at least one step removed from the market in which the alleged conspiracy occurred. Thus injuries Tessera might claim as a participant in the packaging market would require proving conspiracy towards the chip market, injury to the technology market as a whole and then injury to the packaging technology subgroup of the market. The Court finds this chain could easily lead to indirect and speculative injuries. The balance of the *AGC* factors therefore weigh against Tessera's standing to sue in the purported technology market. *See id.*

Chip Market

Tessera is a licensor into the chip market. It licenses semiconductor packaging technology to RDRAM chip manufacturers. Tessera does not supply chips, or components of them. As a licensor, Tessera may recover for antitrust violations only if the defendant's activities were directed at it. *See SCM Corp. v. Radio Corp. of America*, 407 F.2d 166, 169 (2nd Cir. 1969) In *SCM*, the Second Circuit was faced with the question of whether the plaintiff, a licensor, had standing to sue for antitrust violations that caused loss of royalties. *Id.* The Court decided that such a plaintiff only had standing if the defendant's activities targeted plaintiff. *Id*. Tessera is a licensor to the chip market and therefore cannot recover for antitrust violations within that market unless Tessera was

the intended target of Defendants' actions. *See SCM*, 407 F.2d at 169. Tessera has alleged that the aim of Defendants' conspiracy was to boycott its products and put it out of business. Thus, Tessera has alleged sufficient facts to warrant being labeled a target of Defendants' conspiracy in the chip market.

Because Tessera has alleged that it was a target of the alleged conspiracy in the chip market, Tessera has sufficiently alleged its injuries were directly related to Defendant's conspiracy and that its recovery will not be duplicative or create complexity in apportioning damages. *See Bell*, 847 F.2d at 1183. Tessera also claims the damages it is seeking are different from the damages the Defendants' customers would seek, because it is a direct target of the Defendants' conspiracy. *See Hughes*, 278 F.3d 423. Thus, the *AGC* factors fall to Tessera, conferring antitrust standing to sue as a licensor to the chip market.

## CONCLUSION

Tessera's claims sufficiently allege facts that, when construed in the light most favorable to it, confer antitrust standing to sue as a licensor to the chip market only. Thus, Defendants' motion to dismiss is **GRANTED** as to the technology market but **DENIED** as to the chip market. However, this case is exceedingly complex, as most patent cases are, and a tenuous antitrust claim will only muddy the waters for the jurors and the Court. Tessera's only remaining avenue for its antitrust claims is to show that as a licensor to the chip market, it was the target of the Defendants' conspiracy. Accordingly, Tessera should evaluate the viability of its antitrust claims in light of the soon to be developed factual record in this case. Similarly, once the record is further developed, Defendants' may analyze the record and file a Motion of Summary Judgement, pointing out perceived deficiencies in Tessera's antitrust case.

**So ORDERED and SIGNED this 13th day of July, 2005.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**